No. 12521

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

PARK COUNTY ROD AND GUN CLUB,
a Montana Non-Profit Corporation, et al.,

Plaintiffs and Respondents,

-vs-

STATE OF MONTANA, ACTING BY AND THROUGH
THE DEPARTMENT OF HIGHWAYS OF THE STATE
OF MONTANA; ROBERT LEROY WHITE and EDITH
WHITE, husband and wife; ARTHUR DIXON and
FRANCES DIXON, husband and wife,

Defendants and Appellants.

Appeal from:  District Court of the Sixth Judicial District,
              Honorable Robert Wilson, Judge presiding.

Counsel of Record:

    For Appellants:

        Joseph E. Reber argued, Helena, Montana
        Leo J. Kottas, Jr. argued, Helena, Montana

    For Respondents:

        Keefer and Roybal, Billings, Montana
        Neil S. Keefer argued, Billings, Montana
        John W. McDonald, Jr. argued, Livingston, Montana

                    Submitted:  November 28, 1973

                      Decided:  DEC 27 1973

Filed: DEC 27 1973

_Thomas J. Kearney_
                              Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of fact and conclusions of law of the district court of Park County, the Hon. Robert H. Wilson, presiding. The judgment was for plaintiff and essentially declared that a certain quit claim deed dated July 7, 1966, from the State of Montana to defendants Robert LeRoy White and Edith White was void and the State owned the property.

Plaintiff is the Park County Rod and Gun Club. Defendants are the Whites and the State, acting through the Department of Highways.

The case involves a piece of property approximately 1.5 acres in size adjacent to and abutting the Yellowstone River next to Carter's Bridge on old U.S. Highway 89 about 4 1/2 miles south of Livingston. The tract is about 1/4 mile from the junction of old U.S. Highway 89 and new U.S. Highway 89. The tract has been a favorite spot for picnickers and fishermen for many years.

On June 17, 1957, J. L. Anderson and Carrie E. Anderson executed an instrument in favor of the State of Montana designated an "Easement". After describing the property, the following language was used:

> "The Party of the first part does hereby grant,
> assign, and set over to the party of the second
> part all that portion of land described as
> follows, to-wit:
>
>> "All that portion of land north of Carter's
>> Bridge between the old U.S. Highway #89
>> and the Yellowstone River as hereinbefore
>> described,
>
> as a Public Park.
>
> "The Party of the first part shall fully use and
> enjoy the aforesaid premises, except as to the
> rights herein granted.
>
> "To have and to hold the said premises as set
> forth in said easement and right unto the Party
> of the second part to use as a Public Park."

- 2 -

The instrument was recorded and the State took possession to the extent that the Highway Department did a small amount of development as a public park or rest area and it was utilized as a campsite, public boat landing and fishing access area. The Highway Department terminated maintenance of the tract as a public park in the year 1962.

In 1965 the Highway Department formally abandoned the old highway which was immediately adjacent to the tract.

In the meantime, the Andersons, who had executed the "Easement" in 1957, died. Carrie E. Anderson willed her entire estate to her daughter Frances A. Dixon. The decree of distribution made reference to the "reversionary" interest in the tract held by the State under easement.

Subsequently defendants White purchased certain properties from Frances A. Dixon on a contract for deed, including the "reversionary" interest to the tract. Whites then contacted the Highway Department and obtained a quit claim deed dated July 7, 1966, to the tract. The quit claim deed was signed by the Governor of Montana. The deed was held by the bank which held the escrow papers on the contract for deed.

After 1966, the Whites fenced the property.

Plaintiff, respondent here, alleged in its complaint that the instrument entitled "Easement" was an absolute conveyance in fee simple. Defendants argue that the instrument was an easement. In its findings and conclusions the district court did not determine whether the instrument conveyed an easement or a fee simple title, but rather concluded:

> "The interest conveyed * * * by the instrument
> of June 17, 1957 * * * constitutes an interest
> in real property and property of a public nature
> subject to and governed by the provisions of
> Article 17, Sec. 1, of the Montana Constitution
> and subject to the procedural requirements of
> Title 81, Chapter 9, R.C.M. 1947, and Title 32,
> Chapter 39, R.C.M. 1947 * * * This result would
> necessarily follow whether the conveyed interest was
> a conveyance in fee simple or a conveyance of a les-
> ser interest such as an easement for park purposes,
> or any other property interest."

Then the court concluded that since the State had not followed the law in calling for bids, etc. that the quit claim deed was void and the State holds title and defendants White have no interest.

Defendants, appellants here, claim that the nature of the interest conveyed by the instrument must be defined before any conclusions can be made. Defendants insist that only a "right to use", that is an easement right, was conveyed and that such a right is not an "interest in real property", which would require the State to comply with sections 32-3910 and 32-3911, R.C.M. 1947, and Title 81, Chapter 9, R.C.M. 1947.

Plaintiff, on the other hand, argues that (1) the "Easement" instrument conveyed a fee simple title, and (2) in any event, whether an easement or not, it is such an "interest in real property" as to require sale procedures under the above sections 32-3910 and 32-3911. Then, plaintiff argues, that since no sale procedures were had and since the value of the tract was over $100, the quit claim deed was a nullity.

Defendants assert the easement was conveyed for use as a public park pursuant to section 32-3903(5), R.C.M. 1947, as a "park adjoining or near any highway". And further, that such easement was extinguished by the formal abandonment of the old U.S. Highway 89 by the Highway Department in 1965, and by its discontinuance of use of the land as a rest area.

An easement may be lost by abandonment. Babcock v. Gregg, 55 Mont. 317, 178 P. 284. Also, the servitude (easement) is extinguished by the performance of an act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise. Section 67-611(3), R.C.M. 1947. If the State, acting through the Highway Department, abandoned the dominant tenement, the old highway, with which the rest area park was intended to be used and abandoned its maintenance and dominion over the area, it is clear that the easement was abandoned as a matter of law based on those facts and the area

reverted to the owner. Thus it is of importance to determine the nature of the instrument of June 17, 1957. Simply finding, as the district court did, that the instrument created an "interest in real property" is not enough to determine that such "interest in real property" must be disposed of only upon appraisal, bid, etc. More will be said about this later herein.

An easement is defined as the right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon land. Laden v. Atkeson, 112 Mont. 302, 305, 116 P.2d 881. The grant of an easement is the grant of a use and not a grant of title to the land. Bolinger v. City of Bozeman, 158 Mont. 507, 511, 493 P.2d 1062; 28 C.J.S. Easements, § 28, p. 682.

A fee simple is defined as an estate of inheritance which is not defeasible or conditional. Section 67-503, R.C.M. 1947. The holder of a fee simple holds an inheritance clear of any condition, limitation or restriction. Gantt v. Harper, 82 Mont. 393, 404, 267 P. 296.

The important distinction between an easement and a fee simple is that the former describes the right to a use of land which is specific or restrictive in nature, while the latter is the grant of title to the land itself.

Here, the first consideration is whether the instrument conveys the land itself or whether it refers to a right to use. The instrument initially is entitled "Easement". It specifically refers to use. The purposes for which the land was granted, assigned and set over are expressed in the granting clause. Section 67-1516, R.C.M. 1947, provides:

> "A clear and distinct limitation in a grant
> is not controlled by other words less clear
> and distinct."

Here, the limitation is clear and distinct. Moreover, no consideration was recited nor passed to Andersons. 23 Am Jur 2d, Deeds, § 195.

We find then that the instrument was an easement. It granted the "use" of the land as a park connected to the use of the old

Highway 89. This becomes important when considering whether such an easement can be extinguished and abandoned, as was done here. The easement here, of course, was appurtenant to the highway and was procured pursuant to the authority of section 32-3903(5), R.C.M. 1947.

In 1965, the Highway Department officially abandoned old U.S. Highway 89. It had ceased to maintain the area as a park or rest area after 1962. An easement may be lost by abandonment (Babcock v. Gregg, supra). Here, not only was the easement abandoned, it was reconveyed back. It reverted both by abandonment and by intentional conveyance.

The only problem then is whether the State, acting through the Highway Department, can by administrative procedure give the Whites a quit claim deed to clear their title. There was, according to the record, a long-established administrative procedure for handling easements which was followed by the Highway Department. The Highway Department acquires various "interests in /property" which might be termed "transitory" or temporary licenses, permits, leases and easements for construction, maintenance and general highway uses. To say that the language used in section 32-3910, R.C.M. 1947, "any interest in real property" must be sold at public auction, extends to interests of a limited nature for specific highway purposes would make even neighborly permission impossible. Such interests of a limited or restrictive nature are not saleable interests. This/particularly so where the "interest" is merely a right to use, as distinguished from an estate of inheritance or title to real estate.

In the instant case, plaintiff would have us hold the instrument created a fee simple title with covenants running with the title. Under this theory, of course, the State would have held such an "interest in real property" as to have required bids. But, as we have pointed out heretofore, such was not the case.

Another reason appears in the long standing administrative interpretation of the language "any interest in real property"

as not governing easements, leased and construction permits in that the interest is such a limited one, usually acquired for a specific highway purpose, that it is not saleable interest and is therefore not subject to section 32-3910, R.C.M. 1947. State v. King Colony Ranch, 137 Mont. 145, 350 P.2d 841; State ex rel. Ebel v. Schye, 130 Mont. 537, 305 P.2d 350.

Accordingly, we find the district court was in error in holding an easement of this nature to be such an "interest in real property" as to require public sale.

We have examined plaintiff's contention that the Highway Department should have "given" the easement to the Fish and Game Department for use as fishing access. We are not here concerned with the wisdom or advisability of the actions, but rather their legality.

By what has been determined heretofore, the district court judgment is set aside and the cause remanded for dismissal of the complaint.

_Wesley Castles_
Justice.

We Concur:

_James T. Harrison_
Chief Justice

_Gene B. Daly_

_Frank I. Haswell_

_John Conway Harrison_
Justices.