No. 02-534

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 104

_____

NANCY E. WATSON,

      Plaintiff and Appellant,

   v.

GEORGE and MARGO DUNDAS, GEORGE WILLIAM
and GRACE BERBERET, BROADWATER COUNTY
BOARD OF COUNTY COMMISSIONERS, and THE
MONTANA DEPARTMENT OF STATE LANDS,

      Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                   In and for the County of Gallatin, Cause No. DV 94-352
                   The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Thomas M. White, Sedivy, White & White, P.C., Bozeman, Montana

     For Respondents George and Margo Dundas:

         Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld, PLLP,
         Billings, Montana

     For Respondent Broadwater County Board of County Commissioners:

         John T. Flynn, Broadwater County Attorney, Townsend, Montana

     For Respondent Montana Department of State Lands:

         Tommy H. Butler, Special Assistant Attorney General, Helena, Montana

                            _____

                      Submitted on Briefs:  February 28, 2006
                             Decided:  May 9, 2006

Filed:

            _____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Nancy Watson (Watson) appeals from a decision of the Eighteenth Judicial District Court, Gallatin County, in an action by Watson to gain access to her property across the lands of George and Margo Dundas (Dundases). We affirm in part, reverse in part, and remand for further proceedings.

¶2    We consider the following issues on appeal:

¶3    Whether the District Court properly granted summary judgment in favor of the Dundases regarding Watson's claim to an easement by grant.

¶4    Whether the District Court properly granted summary judgment in favor of the Dundases regarding Watson's claim to an easement by necessity.

¶5    Whether the District Court held Watson to the correct burden of proof on her claim that the Lower Road constitutes a public right of way?

¶6    Whether the District Court properly granted summary judgment on Counts VI-XIII, by considering the Dundases' counterclaim for damages, and by entering judgment awarding damages to the Dundases?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7    The Dundases sold the northeast quarter of Section 34, T5N, R3E, Gallatin County, to their son, Roger Dundas, and Watson, his wife at the time, in 1983. The Dundas's land surrounds the parcel that they conveyed to their son and then-daughter-in-law on the east, west, and north. The Dundases own Sections 15, 22, 23, 26, 27, 35 and the northwest quarter of Section 34. *See* attached map. Another private landowner holds the land to the south of this parcel and no outlet exists across this private land that would

2

have provided Roger or Watson access to a public road.  The only apparent access to a public road then, and now, exists across the property owned by the Dundases.

¶8      Watson and Roger purchased the land from the Dundases for $40,000.  They could not afford to pay the purchase price in cash, so they financed the purchase of the property through a loan from the Farmer's Home Administration (FHA). The FHA required that Roger and Watson acquire an easement to access the property before FHA would approve the loan in light of the fact that they could not access their property without traveling across the Dundas's remaining lands.

¶9      Roger requested that his parents provide an easement to access the property.  The Dundases represented to the FHA that they granted a permanent easement to Roger and Watson to facilitate the loan.  The FHA approved the loan with the easement provided by the Dundases.  George Dundas testified that they did not execute the Grant of Easement and Right-of-Way document until 1986, however, because their attorney did not complete the paper work in a timely manner.

¶10     The recitals portion of the grant stated that it meant to provide Watson and Roger Dundas with a "permanent easement and right-of-way over and across the undersigned's remaining lands for purposes of egress and ingress."   The grant portion of the document stated that it granted a "permanent easement and right-of-way over and across Section 27 . . . along the historic road now traversing Section 27 and historically used for ingress and egress to the lands above described in Section 34."

¶11     The granted easement permits Watson to follow an old road, known as the Lower Road, that runs north and slightly west from Watson's land across Section 27.  The road

3

also crosses Section 22, however, another portion of land owned by the Dundases. *See* attached map. It then crosses over Section 21 to the west, owned by George William ("Bill") and Grace Berberet (Berberets). The road proceeds to the northwest into Section 16, owned by the State of Montana, then turns west into Section 17 and intersects with Sixmile Road, a county road. Watson and Roger accessed their property along this road from the time of purchase in 1983 through 1994.

¶12 Watson and Roger Dundas entered into a property settlement agreement in 1993 as part of their dissolution. The property settlement agreement for their divorce provided that Watson would obtain full title to the land purchased from the Dundases. George Dundas sent a letter to Watson in February of 1994 to inform her for the first time that the granted easement permitted her to cross only Section 27. Dundas further informed Watson, "I hereby give you permission to cross section 22 but this permission is limited to you only."

¶13 Watson filed suit to enforce the terms of the easement in May 1994. She contended that the easement granted her the right to cross both Section 22 and Section 27.[1] The District Court issued a temporary restraining order and a preliminary injunction

---

[1]The Third Amended Complaint filed on April 14, 1997, lists thirteen counts. The first two identified the claims as against the Berberets, the Montana Department of State Lands (State), and the Broadwater County Board of County Commissioners (Broadwater County). The remaining counts either identified the Dundases as defendants or stated the claim generally. The counts were as follows: (I) Public/County Road as a Matter of Montana Law, (II) Public Right-of-Way Road as a Matter of Federal Law, (III) Prescriptive Easement, (IV) Easement by Necessity, (V) Grant Easement, (VI) Declaratory Judgment, (VII) Permanent Injunction—Estoppel, (VIII) Fraud, (IX) Reformation, (X) Tortious Interference with Contractual Relationship, (XI) Bad Faith—Breach of Implied Covenant of Good Faith and Fair Dealing, (XII) Intentional Infliction of Emotional Distress, and (XIII) Punitive Damages.

permitting Watson to cross Sections 22 and 27 during the litigation. The Dundases filed a counterclaim on August 14, 1995, alleging, *inter alia*, that Watson damaged their crops planted in Section 22 by driving over them. The parties filed various motions for summary judgment after conducting substantial discovery.

¶14 The District Court granted the Dundases' motion for summary judgment relating to Count IV (Easement by Necessity) and to Count V (Grant Easement) on August 11, 2000. The parties entered into a stipulation on October 26, 2001, permitting the District Court to decide Counts I (public road Montana law) and II (public road federal law) on the basis of the depositions, affidavits, and exhibits filed with the court. The District Court issued a judgment relating to Counts I and II on April 4, 2002, finding that no public right of way or easement existed over Sections 16 and 21.

¶15 In its August 2000 order and a separate April 4, 2002, order, the District Court dismissed Count III (prescriptive easement) in accordance with a concession by Watson and granted summary judgment to the Dundases on Counts VI-XIII (declaratory judgment and various tort based claims). The District Court issued findings of fact and conclusions of law on June 18, 2002, after a bench trial on the Dundases counterclaim, ruling in part that Watson owed $4,200 to the Dundases for damages to their crops. Watson appeals the judgments in favor of the Dundases, the Berberets, the State, and Broadwater County.

## STANDARD OF REVIEW

¶16 This Court reviews a district court's grant of summary judgment *de novo*. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 18, 321 Mont. 99, ¶ 18, 90 P.3d

381, ¶ 18. We apply the criteria contained in Rule 56, M.R.Civ.P. *Staples*, ¶ 18. According to this rule, the moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, ¶ 14, 119 P.3d 47, ¶ 14. The burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Grimsrud*, ¶ 14. If the court determines that no genuine issues of fact exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. *Grimsrud*, ¶ 14. We review legal determinations made by a district court to establish whether the conclusions are correct. *Grimsrud*, ¶ 14.

¶17 We review a district court's findings of fact to determine if they are clearly erroneous. *Ramsay v. Yellowstone Neurosurgical Assocs.*, 2005 MT 317, ¶ 13, 329 Mont. 489, ¶ 13, 125 P.3d 1091, ¶ 13. We use a three part test when determining whether a district court's findings are clearly erroneous: 1) whether the findings are supported by substantial evidence in the record; 2) whether the trial court has misapprehended the effect of evidence; and 3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still determine that the trial court's findings are clearly erroneous when, although evidence supports it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Ramsay*, ¶ 13. We review a district court's conclusions of law for correctness. *Galassi v. Lincoln County Bd. of Com'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, ¶ 7, 80 P.3d 84, ¶ 7.

6

Grant Easement

¶18    The District Court granted summary judgment to the Dundases that the easement granted to Watson applied only to Section 27.  The court found that the more specific language of the grant portion of the document trumped the recital's more general language.  *See* Section 1-4-103, MCA.

¶19    The recitals portion of the easement document provides that the Dundases sought to grant to Roger and Watson a "permanent easement and right-of-way over and across the [Dundases's] *remaining lands* for purposes of egress and ingress to the said northeast quarter of Section 34."  (Emphasis added.)  The language in the grant portion of the document, however, appears to limit the easement to "the historic road now traversing Section 27 and historically used for ingress and egress" to the parcel owned by Roger and Watson.  The grant easement does not specifically mention Section 22.

¶20    General principles of contract law apply in interpreting an easement by grant. *Mularoni v. Bing*, 2001 MT 215, ¶ 32, 306 Mont. 405, ¶ 32, 34 P.3d 497, ¶ 32.  A grant should be interpreted in favor of the grantee.  Section 70-1-516, MCA.  In cases of uncertainty "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."  Section 28-3-206, MCA.

¶21    A presumption also exists that the Dundases granted Roger and Watson an easement through Section 22.  One of "Montana's long-standing maxims of jurisprudence" states that one who grants a thing is presumed to grant also whatever is essential to its use.  *Erker v. Kester*, 1999 MT 231, ¶ 23, 296 Mont. 123, ¶ 23, 988 P.2d

7

1221, ¶ 23. Section 1-3-213, MCA, specifically codifies this principle. The Dundases represented to the FHA that they had granted Roger and Watson an easement to provide a route by which they could access their property. An easement over Section 22, also owned by the Dundases, proves essential to the use of an easement through Section 27 for that purpose.

¶22 This Court will "not isolate certain phrases of the instrument to garner the intent of the parties, but will grasp the instrument by its four corners and in light of the entire instrument, ascertain the paramount and guiding intent of the parties." *Rumph v. Dale Edwards, Inc.* (1979), 183 Mont. 359, 368, 600 P.2d 163, 168. In *Erker*, the Kesters sold a piece of property at Big Sky with a house to the Erkers for $310,000. The Erkers used an asphalt driveway to access the property and house for a six-year period. The asphalt driveway represented the only ingress and egress to the Erkers's property and house. The Kesters later sought to block the Erkers's use of the asphalt driveway on the basis that the $310,000 purchase price did not include the asphalt driveway and that the parties were to negotiate a separate sale and purchase of the asphalt driveway for additional consideration. The agreements documenting the transaction were inconsistent on whether the parties intended to include the asphalt driveway in the original $310,000 purchase.

¶23 We applied the maxim codified in § 1-3-213, MCA, in determining that "access was necessary and essential to the complete use and enjoyment by Erkers of the house and property which Kesters sold them." *Erker*, ¶ 23. We grasped the sale and purchase agreement by its four corners and evaluated the document "in its entirety" in reaching this

conclusion. *Erker*, ¶ 27.

¶24 The Dissent contends that § 70-1-515, MCA, prevents this Court from even examining the recitals portion of a grant unless the "operative words of a grant are doubtful." Dissent, ¶ 48. We have yet to interpret what constitutes "doubtful" language in a grant as set forth in § 70-1-515, MCA. Section 70-1-514, MCA, a companion statute, however, sets forth the inverse proposition. It states that a "clear and distinct limitation in a grant is not controlled by other words less clear and distinct." Section 70-1-514, MCA. This statute applies when the granting document itself contains no ambiguity. For example, the Court in *Park County Rod & Gun Club v. Department of Hwys.* (1973), 163 Mont. 372, 517 P.2d 352, relied upon what is now § 70-1-514, MCA, in rejecting a claim of ambiguity in a granting document.

¶25 There a controversy arose about whether a private party had granted the State fee title to a piece of property along the Yellowstone River or only an easement to use the property as a public park. The private party executed an instrument entitled "Easement," in favor of the State. *Park County Rod & Gun Club*, 163 Mont. at 374, 517 P.2d at 353. The granting document noted that the private party retained the right to use and enjoy the property except as to the rights granted to the State. The portion of the document granting the rights to the State twice referred to the fact that the land was to be used "as a Public Park," and specifically described "said easement." *Park County Rod & Gun Club*, 163 Mont. at 374, 517 P.2d at 354.

¶26 The State later abandoned the public park and executed a quit claim deed in favor of the private party. The local gun club challenged the reversion of the easement back to

the private party on the grounds that the State had failed to follow statutes governing the sale of public land, including an appraisal requirement. The Court applied § 67-1516, R.C.M. (1947), the predecessor to what now is codified at § 70-1-514, MCA. The Court noted that the instrument was titled "Easement," that it referred specifically to the limited grant for "use as a Public Park," and the fact that the State provided the private party no consideration for the easement. In light of the absence of any ambiguities in the granting instrument, the Court recognized the "clear and distinct limitation" in the instrument that the grant was to be an easement only. *Park County Rod & Gun Club*, 163 Mont. at 377, 517 P.2d at 355.

¶27 The granting instrument in this case, however, drafted by the Dundases, contained a significant ambiguity. This significant ambiguity must be interpreted against the Dundases as the drafting party. *See* Section 28-3-206, MCA. The document's stated purpose was to provide Roger and Watson a permanent easement across all of the Dundases "remaining lands for purposes of egress and ingress" to the northeast quarter of Section 34. The grant portion of the document contradictorily limits the easement to cover only Section 27. Section 70-1-514, MCA, and § 70-1-515, MCA, have no application under those circumstances.

¶28 Instead we must not isolate the phrase limiting the easement to Section 27 and must evaluate the parties' intent in light of the entire document. *Rumph*, 183 Mont. at 368, 600 P.2d at 168. We also must interpret the grant in favor of Watson as the grantee. Section 70-1-516, MCA. A review of the entire document leads us to conclude that the District Court improperly granted summary judgment in favor of the Dundases that they

did not grant Watson an easement across Section 22 of their property.

¶29     The conflicting language in the granting document permitted the District Court to consider extrinsic evidence regarding the parties' intent. *Doble v. Bernhard*, 1998 MT 124, ¶ 19, 289 Mont. 80, ¶ 19, 959 P.2d 488, ¶ 19. The undisputed extrinsic evidence demonstrated that Roger and Watson could not access their property in Section 34 without traveling across all of the Dundases's remaining lands, including Section 22 and Section 27. They provided $40,000 consideration to the Dundases for the landlocked parcel in Section 34. The State in *Park County Rod & Gun Club* had provided no consideration for the grant. *See* 163 Mont. at 374, 517 P.2d at 353. The $40,000 consideration in this case stemmed from the FHA's loan to Roger and Watson, a loan contingent upon the Dundases's grant of an easement to Roger and Watson that provided access to their newly purchased property. The Dundases made no claim that they sold the parcel to Watson and Roger for a reduced price to reflect the lack of access. The Dundases made no claim that the $40,000 purchase price reflected anything other than fair-market value. George Dundas even conceded that they intended to provide Roger and Watson with an easement across both sections:

> Attorney:    Okay. In other words, if you're going to leave the [Watson's] house here and go up to [Section] 27, if you can't get out of [Section] 27, you never get to Six Mile Road?
>
> Dundas:    No.
>
> Attorney:    Right?
>
> Dundas:    That's right.
>
> Attorney:    And that wasn't what you intended, is it?

Dundas:       No.

¶30     The extrinsic evidence leads us to conclude that Roger and Watson did not pay fair market value for the mere hope of a permissive easement for as long as Roger and Watson remained married.  The parties dispute whether Watson timely filed a cross-motion for summary judgment.  We require no cross-motion, however, when the moving party had a full and fair opportunity to consider the proposition and all other criteria for summary judgment are met.  *See Canal Ins. Co. v. Bunday* (1991), 249 Mont. 100, 108, 813 P.2d 974, 979.

¶31     We conclude, as a matter of law, that the granting instrument, when considered as a whole, and in conjunction with the undisputed extrinsic evidence, provided Watson with an easement across the Dundases remaining property, including Section 22 and Section 27.  Similar to the asphalt driveway in *Erker*, the permanent easement granted by the Dundases "was necessary and essential to the complete use and enjoyment" by Roger and Watson of the landlocked parcel in Section 34 that the Dundases earlier had sold them.  *Erker*, ¶ 23; § 1-3-213, MCA.  We refuse to allow the Dundases to benefit from an ambiguity of their own making and to skirt the overriding intent of the granting document: to provide Roger and Watson ingress and egress to their landlocked parcel—a landlocked parcel sold to them by the Dundases.

## Easement by Necessity

¶32     The two elements of an easement by necessity are unity of ownership and strict necessity.  *Loomis v. Luraski*, 2001 MT 223, ¶ 49, 306 Mont. 478, ¶ 49, 36 P.3d 862, ¶ 49.  Thus, an easement exists by necessity when the owner of a tract of land sells a part of

the tract that has no outlet to a public road except over the other lands of the seller. *Kullik v. Skyline Homeowners Ass'n, Inc.*, 2003 MT 137, ¶ 22, 316 Mont. 146, ¶ 22, 69 P.3d 225, ¶ 22. Strict necessity means a lack of practical access to a public road for ingress and egress. *Kelly v. Burlington Northern R.R. Co.* (1996), 279 Mont. 238, 243, 927 P.2d 4, 7. Strict necessity must exist both at the time the unified tracts are severed and the time of exercise of the easement. *Loomis*, ¶ 50.

¶33 The imposition of an easement by necessity will arise only in very specific circumstances, "where an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the lands of strangers, a way of necessity exists over the remaining lands of the grantor." *Graham v. Mack* (1984), 216 Mont. 165, 175, 699 P.2d 590, 596. The party seeking to establish an easement by necessity carries the burden to prove all elements required to establish that easement. *Loomis*, ¶ 51. Additionally, a way of necessity only exists across land that had access to a public road when the property was divided. *Schmid v. McDowell* (1982), 199 Mont. 233, 238, 649 P.2d 431, 433.

¶34 The District Court based its grant of summary judgment solely on unity of title grounds. The court stated in its order granting the Dundases summary judgment on the easement by necessity count that "there is no unity of title from Plaintiff's property to a public road." This statement is incorrect. The Dundases own Sections 15, 22, 23, 26, 27, 35, and the northwest quarter of Section 34, which are contiguous lands. The maps in the record demonstrate that the public Sixmile Road crosses Section 15. Indeed, in its order entered two years later on Counts I and II, relating to public rights of way over Sections

13

16 and 21, the District Court as the trier of fact found that the Dundases owned Sections 15, 22, 23, 26, 27, 35, and the northwest quarter of Section 34, thus demonstrating unity of title over lands from Watson's property to the public road.

¶35 The District Court also failed to rule on the strict necessity of an easement in the face of conflicting evidence. Watson testified in her deposition that there is only one road, the Lower Road, into and out of her property.

¶36 Several problems emerge, however, with respect to the Lower Road. First, the Berberets own Section 21 and therefore Watson cannot satisfy the unity of title element for an easement by necessity. Moreover, no public right of way exists over Section 21, pursuant to our holding in ¶¶ 39-42 below. The Dundases note that Bill Berberet described in his deposition another road to Watson's property. On a casual reading of the colloquy between Berberet and the questioning attorney, it would seem that this road avoids the Dundases' land. A review of the maps in the record, however, reveals that to use this road Watson would have to cross land belonging to the Dundases.

¶37 Watson asserts that various other possible routes exist from her property to a public road, including the "Upper Road." George Dundas constructed the Upper Road in 1978 or 1980 and it passes from Watson's property north through Sections 27, 22, and part of 15, ultimately connecting with Sixmile Road in Section 15. Watson described the "Upper Road" as more of a shifting trail than a road. Watson notes that making this route passable would involve considerable expense. Watson further contends that her easement claim is not restricted to the Lower and Upper Roads, but rather would pass over whatever of the Dundases' contiguous sections that permit her to reach the nearest public

14

road, though she offers no specifics beyond the two mentioned routes.

¶38    Given the District Court's incorrect statement with regard to unity of title directly between Watson's land and a public road, the absence of any ruling on strict necessity, and the conflicting evidence about strict necessity, we conclude that the District Court's grant of summary judgment on this issue was in error. We reverse the judgment against Watson on Count IV and remand the cause for further proceedings. Although we have determined that the Dundases granted an easement to Watson to cross Section 22 and Section 27, Watson still has no outlet to a public road in light of the District Court's rulings with respect to a public road across property owned by the State and the Berberets. The District Court also denied Watson's claim of a prescriptive easement across those same lands. Thus, the District Court still must resolve the issue of Watson's claim on an easement by necessity upon remand.

### Burden of Proof

¶39    Watson argues that the District Court improperly found that she must prove her public right of way on the Lower Road by clear and convincing evidence. Watson contends that she needed to prove her case only by a preponderance of the evidence. *See Richter v. Rose*, 1998 MT 165, 289 Mont. 379, 962 P.2d 583.

¶40    We have addressed the issue of burden of proof for prescriptive easements, including public rights of way, and have established a "long line of clear precedent setting forth the burden of proof in prescriptive easement cases as that of clear and convincing evidence." *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 205, 930 P.2d 37, 43. We inadvertently may have introduced ambiguity on this point in *Richter* by

stating "that the District Court correctly concluded that the Richters did not establish the existence of a public highway pursuant to R.S. § 2477 *by a preponderance of the evidence*." *Richter*, ¶ 32 (emphasis added).

¶41 We therefore reaffirm the *Wareing* line of precedent on this issue, that clear and convincing evidence constitutes the applicable burden of proof for prescriptive easements, including public rights of way. We conclude that the District Court properly applied the clear and convincing standard in Watson's case.

¶42 Watson also contends that the District Court misapprehended the applicable rule of law and improperly required her to prove five years of continuous use of the Lower Road prior to July 1, 1895, in order to establish the road as a public right of way. Watson cites no authority, however, that indicates that a different length of time should be applied. The State and Broadwater County respond that the five-year requirement is correct. We agree with the State and the County. Our precedent is clear that to establish a public right of way by prescription in these circumstances, Watson had the burden to prove that the public used the Lower Road over Sections 16 and 21 for five years prior to July 1, 1895. *See City of Butte v. Mikosowitz* (1909), 39 Mont. 350, 354-55, 102 P. 593, 594-95. We affirm the District Court's holdings on Counts I and II.

### Counts VI-XIII and Damages

¶43 Watson argues that the District Court predicated its ruling on Counts VI-XIII upon its grant of summary judgment on Count IV (Easement by Necessity) and Count V (Grant Easement) to the Dundases. Watson contends that because the District Court incorrectly entered judgment on these alleged predicate counts, the judgment on Counts VI-XIII

16

should be reversed. We agree and remand to the District Court for further proceedings consistent with our decision. We reverse Count VI only to the extent that the court based its determination on the lack of an easement across Section 22 of the Dundases land. We do not disturb the District Court's conclusion that no public right of way exists across the Berberet's property or that Watson had obtained a prescriptive easement across this property as alleged in Counts I, II, and III. We further reverse the District Court's award of damages to the Dundases caused by Watson's use of the road across Section 22 in light of our conclusion that the Dundases had granted an easement to Watson across Section 22 and Section 27.

## CONCLUSION

¶44 For the foregoing reasons, we affirm the District Court's order regarding the public right of way issues. We reverse the District Court's order relating to the granted easement across Section 22 and hold that the easement granted by the Dundases allows Watson to cross Section 22 and Section 27. We further reverse the District Court's order relating to the easement by necessity across the Dundases' property, and the damages issues, and we remand the cause for further proceedings on the remaining counts.

¶45 Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

17

Justice Jim Rice dissenting in part.

¶46 I dissent from the Court's first holding herein, regarding the easement grant.

¶47 The Court finds ambiguity in the easement document by comparing the grant language with the recital language, *see* ¶ 19, and resolves that ambiguity by applying general principles of contract law, including resort to extrinsic evidence. However, the Court fails to apply the statute which specifically controls this matter.

¶48 The application of recital and grant language within grant documents is governed by § 70-1-515, MCA, which provides as follows:

> **70-1-515. Recitals–when resorted to.** If the operative words of a grant are doubtful, recourse may be had to its recitals to assist the construction.

¶49 This statute subjugates a grant document's recitals to the operative wording of the grant itself; the recitals and the grant do not stand on equal footing. The statute directs that recitals may be looked to only if the words of the grant are doubtful. Here, no doubt whatsoever emanates from the operative words of the grant: the easement was clearly granted over Section 27 only. Thus, the Court's obligation here is to apply the governing statute and reach the conclusion which the statute requires us to reach—that the easement does not extend over Section 22, or any other property owned by the Dundases.

¶50 Instead, however, the Court looks past the clear language of the grant in favor of nebulous phrases within the recitals which refer to "the purpose" of the document as granting an easement "over and across the undersigned's remaining lands," and then embarks on a journey to determine, using extrinsic evidence, to which of the "remaining lands" the recitals are referring. Given that the Dundases own many other "remaining

18

lands" in the surrounding area, the Court opens a Pandora's Box of ambiguity that well illustrates both the purpose served by the statute and the Court's ill-advised decision to discard it.

¶51 Further, the Court bends other of our principles to complete its journey. Citing *Mularoni v. Bing*, the Court claims that "[g]eneral principles of contract law apply in interpreting an easement by grant." *See* ¶ 20. This is indeed true—*if* the grant is unclear and the meaning of the grant needs to be interpreted. *See Mularoni*, ¶ 32 ("In interpreting the *meaning of an easement grant*, contract principles apply." (emphasis added)). The general contract principles offered by the Court are not applied when an easement's grant language is crystal clear and requires no interpretation.

¶52 The Court then cites the general contract interpretational principles which instruct that we will "not isolate certain phrases of the instrument," but will "grasp the instrument by its four corners and in light of the entire instrument, ascertain the paramount and guiding intent of the parties." *See* ¶ 22. However, instead of grasping the document, the Court releases it, particularly the clear language of the grant, and looks to extrinsic evidence.

¶53 The Court then uses that evidence to create its own version of a road story, asserting that "[t]he undisputed extrinsic evidence demonstrated that Roger and Watson could not access their property in Section 34 without traveling across all of the Dundases' remaining lands, including Section 22 and Section 27." *See* ¶ 29. Of course, "all of the Dundases' remaining lands" include not only Section 22 and Section 27, but Section 15, Section 23, Section 26, part of Section 34 and Section 35 as well. Thus, the Court's

19

focus on the recitals has led it to conclude that the easement somehow granted a circuitous access route over some seven sections of Dundases' property, finally ending in Watson's land in Section 34. That is a long way home. I submit that the Court's rationale well matches this route.

¶54 I would apply the clear instruction provided by § 70-1-515, MCA, and affirm the District Court on that issue. I concur with the Court's remaining holdings.


/S/ JIM RICE


Chief Justice Karla M. Gray and Justice James C. Nelson join the dissent of Justice Rice.


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON

