**FILED**

October 27 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0025

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 227

_____

MONTANA BOARD OF PHARMACY,

      Plaintiff and Appellee,

    v.

THOMAS E. KENNEDY,
d/b/a CANADIAN CONNECTION,

      Respondent and Appellant.

_____

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 04-610
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Thomas E. Kennedy, self-represented litigant; Billings, Montana

      For Appellee:

        Steve Bullock, Montana Attorney General; Michael L. Fanning,
Annjeanette Lindle; Special Assistants Attorney General;
Helena, Montana

_____

                 Submitted on Briefs:  August 25, 2010

                          Decided:  October 27, 2010

Filed:

      _____
                       Clerk

W. William Leaphart delivered the Opinion of the Court.

¶1     Thomas E. Kennedy d/b/a Canadian Connection (Kennedy) appeals from the order of the District Court for the First Judicial District, Lewis and Clark County, denying his motion for summary judgment and granting summary judgment in favor of the Montana Board of Pharmacy (the Board).  We affirm.

¶2     We consider the following issues on appeal:

¶3     Whether the District Court erred in granting the Board's motion for summary judgment, permanently enjoining Kennedy from engaging in the practice of pharmacy or assisting in the unlicensed practice of pharmacy, in violation of § 37-7-301, MCA, and in denying Kennedy's motion for summary judgment seeking dissolution of the preliminary injunction and reversal of his contempt of court conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     This case arises out of a nearly decade-long battle between the Board and Kennedy, which has played out in several lawsuits involving multiple business entities. The earliest legal proceeding involved Rx Depot, Inc. (Rx Depot), a company of which Kennedy's wife Sandra was the titular owner, but that Kennedy himself admittedly operated.  Like Canadian Connection, Rx Depot assisted individuals with prescription drug orders, advising and enabling its customers to order prescription medicines from low-cost, out-of-state sources, in return for a commission paid by the foreign pharmacy. In August 2003, District Judge Jeffrey Sherlock of the First Judicial District entered a preliminary injunction against Sandra Kennedy d/b/a Rx Depot, enjoining Rx Depot from

2

continuing business on the grounds that its activities were violative of various provisions of the Montana Pharmacy Act, § 37-7-101, et seq., MCA ("the Act"). Several months later, the United States District Court for the Northern District of Oklahoma granted a preliminary injunction against Rx Depot's parent company (also named "Rx Depot, Inc."), which enjoined all affiliates and d/b/a entities such as Mrs. Kennedy's. Judge Sherlock's injunction was then dissolved, as he concluded that the federal injunction was binding on Mrs. Kennedy's Rx Depot franchise, thereby eliminating any threat of irreparable harm, and also for lack of adequate notice.

¶5 Kennedy subsequently ceased doing business as Rx Depot, but carried on virtually identical business activities under the new name "Canadian Connection." The Board continued its pursuit of Kennedy by filing a new petition seeking to enjoin Canadian Connection from engaging in its now-familiar prescription drug business. An initial hearing on the petition for injunctive relief was held in Judge Honzel's Court in the First Judicial District in September, 2004, after which Judge Honzel granted the Board's petition for injunctive relief. Kennedy was undeterred by the injunction. Canadian Connection continued business as usual in defiance of Judge Honzel's order, and Kennedy even penned a letter to Governor Schweitzer in July of 2007 openly proclaiming that he was violating the injunction. Far from attempting to fly under the radar, Kennedy continued to aggressively promote his business, arguing earnestly and openly for the need for his services as a matter of public policy, and repeatedly asserting that his activities were outside the Board's regulatory authority.

3

¶6    The Board invited Kennedy to its meetings to discuss his business and seek a resolution, but Kennedy declined all such invitations on the basis of his continued position that the Board had (and has) no authority over him as he is not, in the commonly used sense of the word, a pharmacist. In 2007, the Board served discovery requests on Kennedy and filed a motion for sanctions on the basis of Kennedy's continued disobedience of Judge Honzel's order. Responding *pro se* as he had in the initial proceedings, Kennedy offered up a number of arguments against the motion for sanctions, and responded to each discovery request seeking information about his activities at Canadian Connection by invoking his Fifth Amendment privilege against self-incrimination. After a hearing in January 2009, the Court (now under the Hon. Kathy Seeley after the retirement of Judge Honzel) issued an order finding Kennedy in contempt of court for violating Judge Honzel's preliminary injunction of 2004, imposing a $4,000 civil penalty and ordering Kennedy to immediately comply with all portions of the injunction.

¶7    Kennedy appealed the finding of contempt of court to this Court, but we dismissed his appeal as contempt orders are not appealable except within strictly drawn parameters, which were not met in this case. *Board of Pharmacy v. Canadian Connection*, DA 09-0151. We also declined a writ of supervisory control. *Kennedy v. District Court*, OP 09-0366. The parties filed cross-motions for summary judgment in District Court, the Board seeking to permanently enjoin Kennedy from his business activities, and Kennedy seeking dissolution of the preliminary injunction and reversal of the contempt of court

4

conviction. A hearing was held on the motions for summary judgment in November 2009, after which Judge Seeley issued an order granting the Board's motion and denying Kennedy's. It is from this order that Kennedy appeals.

## STANDARD OF REVIEW

¶8 We review a district court's grant or denial of a motion for summary judgment de novo. *State v. Butte-Silver Bow County*, 2009 MT 414, ¶ 17, 353 Mont. 497, 220 P.3d 1115, *Goettel v. Estate of Ballard*, 2010 MT 140, ¶ 10, 356 Mont. 527, 234 P.3d 99. Applying the criteria contained in M. R. Civ. P. 56, we determine whether the moving party has established both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Goettel*, ¶ 10, citing *Watson v. Dundas*, 2006 MT 104, ¶ 16, 332 Mont. 164, 136 P.3d 973, *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, 119 P.3d 47.

¶9 The determination of the existence of genuine issues of material fact "is one that is not always easily ascertained . . . mere disagreement about the interpretation of a fact or facts does not amount to genuine issues of material fact." *Gilko v. Permann*, 2006 MT 30, ¶ 25, 331 Mont. 112, 130 P.3d 155, quoting *Sprunk v. First Bank Sys.*, 252 Mont. 463, 466, 830 P.2d 103, 105 (1992). Important in the determination is "whether the material facts are actually disputed by the parties or whether the parties simply interpret the facts differently." *Sprunk*, 252 Mont. at 466, 830 P.2d at 105.

¶10 We review a district court's findings of fact to determine if they are clearly erroneous. *Goettel*, ¶ 11, citing *Watson*, ¶ 17, *Ramsey v. Yellowstone Neurosurgical*

5

*Assocs.*, *P.C.*, 2005 MT 317, ¶ 13, 329 Mont. 489, 125 P.3d 1091. We review a district court's conclusions of law and statutory interpretations for correctness. *Signal Perfection, Ltd., v. Rocky Mt. Bank—Billings*, 2009 MT 365, ¶ 10, 353 Mont. 237, 224 P.3d 604.

## DISCUSSION

¶11 Kennedy presents numerous issues. As with many *pro se* litigants, it is difficult to tell precisely what Kennedy seeks to appeal, as nearly all the findings adverse to Kennedy in the various District Court cases are contested at some point in his brief. Nevertheless, it is clear that Kennedy has invested considerable time and effort on the arguments he advances, and we do not find his principal contentions unclear. Kennedy appeals the order of the District Court granting summary judgment in favor of the Board, and denying his motion for reversal of the contempt of court conviction and for dissolution of the 2004 injunction. We affirm the District Court both with respect to its grant of summary judgment in favor of the Board, and with respect to its denial of Kennedy's motion for summary judgment.

¶12 *Whether the District Court erred in finding that there was no issue of material fact precluding a determination that Kennedy's business activities were prohibited by the Act.*

¶13 In determining whether the District Court correctly entered summary judgment in favor of the Board, we consider several sub-issues. First, we consider whether the District Court's findings of fact regarding Canadian Connection's business activities were

clearly erroneous. We then consider whether the District Court correctly concluded that these activities fall within the applicable statutory parameters regulating the unlicensed practice of pharmacy. We conclude with whether the permanent injunction was appropriately entered through a grant of summary judgment.

¶14 The District Court's grant of the Board's motion for summary judgment turned on its finding that Kennedy was in violation of § 37-7-301, MCA, which provides:

> **37-7-301. Unlawful practice.** Except as provided in 37-7-307 through 37-7-309, it is unlawful for a person to:
> (1) engage in the practice of pharmacy unless licensed by the board; or
> (2) assist in the practice of pharmacy unless registered by the board as a pharmacy technician.

¶15 The "practice of pharmacy" is defined in § 37-7-101(33), MCA, as:

> (a) interpreting, evaluating, and implementing prescriber orders;
> (b) administering drugs and devices pursuant to a collaborative practice agreement and compounding, labeling, dispensing, and distributing drugs and devices, including patient counseling;
> (c) properly and safely procuring, storing, distributing, and disposing of drugs and devices and maintaining proper records;
> (d) monitoring drug therapy and use;
> (e) initiating or modifying drug therapy in accordance with collaborative pharmacy practice agreements established and approved by health care facilities or voluntary agreements with prescribers;
> (f) participating in quality assurance and performance improvement activities;
> (g) providing information on drugs, dietary supplements, and devices to patients, the public, and other health care providers; and
> (h) participating in scientific or clinical research as an investigator or in collaboration with other investigators.

¶16 Kennedy argues that the Board's motion for summary judgment was improperly granted because an issue of material fact remains: namely, that he was not "practicing

7

pharmacy" or "assisting in the practice of pharmacy." We observe that Kennedy here confuses a disputed fact with a conclusion of law. That Kennedy was "practicing pharmacy" was a legal conclusion reached by the District Court, *not* an issue of fact, such as the nature and extent of his business activities. We will not, however, fail to address the substance of Kennedy's argument because of this simple (though oft-repeated) error. From a review of the record, it is apparent that few of the facts are actually in controversy; rather, Kennedy simply disagrees with their characterization and the conclusions reached as a result. This is suggested by the fact that this appeal stems from cross-motions for summary judgment, indicating that Kennedy also believed that there were no material facts in dispute with respect to the activities carried on by his business.[1] Indeed, he says as much in his brief, despite scattered assertions to the contrary: "[a]ppellant also believes the facts are uncontroverted."

¶17 The District Court's order made clear that it relied upon several sources in constructing the factual record. First, the District Court found convincing the direct testimony of Rebecca Deschamps, the former executive director of the Board of Pharmacy, who described her personal experiences visiting Kennedy's "storefront" place

---

[1] We note here, however, that the filing of cross-motions for summary judgment, by itself, does not establish that there are no issues of material fact. Rather, applicable rules of civil procedure "do not bar either party from claiming the existence of issues of fact sufficient to prevent entry of summary judgment against it, in spite of simultaneous motions for summary judgment by opposing parties." *Ike v. Jefferson Nat'l Life Ins. Co.*, 267 Mont. 396, 399, 884 P.2d 471, 474 (1994). A court must therefore "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. at 400, 474, quoting *Heublein, Inc., v. United States*, 996 F.2d 1455, 1461 (2nd Cir. 1993).

of business while posing as a prospective customer. Second, the District Court drew an adverse inference from Kennedy's invocation of his Fifth Amendment right against self-incrimination in response to the Board's discovery requests, which sought in 2007 to determine more clearly the scope and character of Kennedy's continued activities. No less important were Kennedy's own admissions that he continued to violate the 2004 Order, his descriptions of his business during hearings before the lower court, and the proper deference accorded by Judge Seeley to Judge Honzel's findings of fact accompanying the 2004 order granting a preliminary injunction.

¶18   Kennedy takes issue with an alleged overreliance by the District Court on the testimony of Mrs. Deschamps, who is of course not an unbiased witness, and who testified to events occurring three years before the hearing. Kennedy asserts that "based only on the testimony given at the contempt hearing by a surprise witness, the Court has judged that Appellant is practicing pharmacy." He repeats similar assertions throughout. We find nothing in the record that suggests that the District Court improperly relied upon Mrs. Deschamps' testimony, even were it the only source relied upon by the District Court—but it is manifestly *not* the only source. As mentioned in the preceding paragraph, numerous sources contributed to the extensive factual record.

¶19   Kennedy provided the Court with some insight into his business activities in his direct testimony during the hearing of January 15, 2009, on the Board's motion to hold Kennedy in contempt of court for failure to abide by the 2004 Order. During this hearing, while still strongly disputing the conclusion that his activities fit within the

9

statutory description of the "practice of pharmacy," Kennedy acknowledged that he routinely consults with patients about prescription medications; has patients fill out detailed questionnaires inquiring into the patient's medical history, allergy information, other prescriptions currently taken, and the like; recommends generic substitutes for brand-name drugs; discusses the possibility of splitting larger doses of medicine into smaller doses; "assists Montana consumers to purchase prescription drugs . . . in spite of [the 2004 injunction]"; arranges for patient counseling by entities unlicensed in Montana; and promotes his business as a source of prescription medication through promotional literature and advertising. His testimony largely corroborated Mrs. Deschamps' description of her experiences.

¶20 We also agree with the District Court that Kennedy's responses to the Board's 2007 discovery requests properly support, at the least, a negative inference from the refusal to answer, if not simply an order that the requests be admitted under M. R. Civ. P. 36(a) and 37(a)(3). We also agree with the Board and the District Court that any deficiencies in the factual record that are alleged by Kennedy are due in no small part to his refusal to provide the Board with meaningful responses to the factual inquiries in the Board's discovery requests. Instead, Kennedy invoked his Fifth Amendment privilege against self-incrimination in response to each of the Board's requests. It is clear that the privilege was validly asserted, given the criminal penalties imposed by the Act in § 37-7-323, MCA, but he cannot escape the consequences of his refusal to disclose the facts surrounding his business activities.

¶21     It is a general and long-standing principle that "[s]ilence is often evidence of the most persuasive character," *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54, 44 S. Ct. 54, 56 (1923), when "it would have been natural under the circumstances to object to the assertion in question." *United States v. Hale*, 422 U.S. 171, 176, 95 S. Ct. 2133, 2136 (1975).  In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S. Ct. 1551 (1976), the United States Supreme Court explained that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions" when they claim the privilege.  *Baxter*, 425 U.S. at 318, 96 S. Ct. at 1558, citing John H. Wigmore, *Evidence in Trials at Common Law* vol. 8, § 439 (John T. McNaughton ed., rev ed., Little, Brown & Co. 1961).  *Baxter* has been widely followed in the Circuit courts, as noted in *La Salle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995): "[t]he rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals . . . in the two decades since Baxter was decided." (citations omitted).   It has likewise been widely accepted in our own circuit.  *See, e.g., Singh v. Gonzalez*, 491 F.3d 1019, 1024 (9th Cir. 2007), *United States v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997); *see generally* Robert Heidt, *The Conjurer's Circle - The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1126-32 (1982).

¶22     In addition to the "persuasive character" of silence, an equally important rationale for the principle of adverse inference is that the opposing party is often greatly disadvantaged by the inability to obtain discovery.  *LaSalle*, 54 F.3d at 390 n. 4.  We find

11

this rationale highly noteworthy here. Had Kennedy simply complied with the Board's discovery requests, the alleged overreliance on Mrs. Deschamps' testimony would have been avoided.

¶23 We have not addressed *Baxter* or the principle of adverse inference in our previous jurisprudence, and are reluctant to dive into unexplored waters in *pro se* proceedings without adequate briefing from both parties. We therefore decline to explicitly incorporate the doctrine here, but we recognize its widely-accepted application. As the District Court observed, similar principles are codified in our Rules of Civil Procedure which can be used to much the same end. Immediately after noting the adverse inference principle in *Baxter*, Judge Seeley explained that "Rule 36(a) of the Montana Rules of Civil Procedure also provides authority for the Court to order requests admitted if meaningful answers are not provided."

¶24 The rule states in part: "[i]f the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served." M. R. Civ. P. 36(a). We have repeatedly made use of this rule and M. R. Civ. P. 37(a)(3) to treat evasive or nonexistent responses to discovery requests as admissions, and have used the admissions obtained as the basis for summary judgment. *All-States Leasing Co. v. Top Hat Lounge*, 198 Mont. 1, 649 P.2d 1250 (1982), followed in *Wight v. Gonzalez*, 249 Mont. 268, 270, 815 P.2d 598, 600 (1991).

¶25 We also accord due deference to the 2004 Findings of Fact issued by Judge Honzel, which we conclude are not clearly erroneous. These findings were supported by

substantial evidence, the evidence was not misapprehended, and no mistake was committed. Judge Honzel found that Canadian Connection operates for a fee "paid by the Canadian pharmacy which fills the prescription," and that Kennedy provides a form which is then transmitted to unlicensed pharmacies in Canada, which includes customer information, a brief medical questionnaire, and a customer agreement.

¶26 We concur with Judge Seeley's characterization of the factual record in this case as "extensive," and with her conclusion that there were no genuine issues of material fact precluding summary judgment. We now apply the facts to the relevant statutes, in order to determine whether the District Court correctly concluded that the factual record establishes that Kennedy's activities were violative of the Act, thereby entitling the Board to summary judgment as a matter of law. We review conclusions of law de novo.

¶27 On careful examination of the record before us, we agree with the District Court that even when viewed in the light most favorable to Kennedy, the facts clearly demonstrate that he has been engaging in numerous activities defined by statute as the "practice of pharmacy." It is clear, for example, that Kennedy has interpreted, evaluated and implemented prescriber orders, which meets the definition of the "practice of pharmacy" under § 37-7-101(33)(a), MCA; has provided information on drugs to patients and the public, which is the "practice of pharmacy" under § 37-7-101(33)(g), MCA; and has been assisting unlicensed pharmacies in the practice of pharmacy through virtually all phases of his business model, under any reasonable interpretation of "assist" (which is not defined in the Act). As it is undisputed that Kennedy has no license to practice

pharmacy, his activities fall within the conduct prohibited by the statute. It is not necessary for this Court to set forth exactly which parts of the definition apply to Kennedy, as we conclude that the District Court had a number of plausible grounds to find Kennedy in violation of § 37-7-301, MCA, and correctly did so. We also observe that in light of this conclusion, we find no merit in Kennedy's argument that he is not within the authority of the Board of Pharmacy to regulate under § 37-7-201(2), MCA, and not subject to injunctive actions as a result, under § 37-1-317, MCA.

¶28 ***Whether the District Court properly granted a permanent injunction on a motion for summary judgment.***

¶29 We turn to the question of whether the District Court correctly granted a permanent injunction on summary judgment. Section 27-19-102, MCA, states in part:

> **27-19-102. When final injunction may be granted to prevent breach of obligation.** Except where otherwise provided . . . a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant where:
> (1) pecuniary compensation would not afford adequate relief;
> (2) it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;
> (3) the restraint is necessary to prevent a multiplicity of judicial proceedings; or
> (4) the obligation arises from a trust.

¶30 The District Court found that "pecuniary compensation would not afford the type of protection the Board's regulatory statutes are designed to afford the public," and that a permanent injunction was necessary to "preclude the multiplicity of proceedings that have been the hallmark of this case." It is clear from our prior jurisprudence that

14

summary judgment is an appropriate vehicle for the issuance of a permanent injunction in the proper circumstances. *Virginia City v. Olsen*, 2002 MT 176, ¶¶ 15-17, 310 Mont. 527, 52 P.3d 383, *Cole v. Flathead County*, 236 Mont. 412, 418, 771 P.2d 97, 101 (1989). Where the District Court has clearly outlined the grounds underlying its summary judgment ruling, a permanent injunction may be properly granted on summary judgment. We conclude that the District Court correctly did so here.

¶31 ***Whether the District Court properly denied Kennedy's motion for summary judgment.***

¶32 We review the denial of a motion for summary judgment de novo. We consider the evidence in the light most favorable to the Board in determining whether Kennedy is entitled to judgment as a matter of law on the claims he raises in his motion for summary judgment. First, Kennedy argues that the issuance of the preliminary injunction was improper because the Board lacked authority to regulate his activities. Second, Kennedy seeks reversal of his contempt of court conviction, arguing that the penalty was improperly applied because his activities are outside the reach of the applicable sections of the Act. We conclude that the District Court correctly denied Kennedy's motion for summary judgment as to both of these contentions, given our conclusion that the Board was entitled to summary judgment on the issue of whether Kennedy was "practicing pharmacy" under the Act, placing Kennedy squarely within the Board's regulatory authority.

¶33  *Affirmed* as to both the grant of the Board's motion and the denial of Kennedy's motion, and remanded to District Court for such action as may be necessary to enforce the District Court's January 16, 2009 contempt order.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE MCGRATH
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS