FILED

08/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0599

DA 19-0599

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 195

ELK GROVE DEVELOPMENT COMPANY,

     Plaintiff and Appellee,

  v.

FOUR CORNERS COUNTY WATER AND SEWER DISTRICT,

     Defendant and Appellant,

ELK GROVE HOMEOWNERS ASSOCIATION, INC.,
a Montana Non-Profit Corporation,

     Intervenor and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 18-778A
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Susan B. Swimley, Attorney & Counselor at Law, Bozeman, Montana

          Brian K. Gallik, Gallik, Bremer & Molloy, P.C., Bozeman, Montana

          Dana E. Pepper, River and Range Law, Bozeman, Montana

     For Appellee Elk Grove Development Company:

          Alan F. McCormick, Nicholas J. Lofing, Garlington, Lohn & Robinson,
PLLP, Missoula, Montana

     For Intervenor and Appellee Elk Grove Homeowners Association, Inc.:

          Alanah N. Griffith, Liz Leman, Griffith & Cummings, PC, Big Sky,
Montana

Submitted on Briefs:  June 3, 2020

Decided:  August 4, 2020

Filed:

_____
Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1 Four Corners County Water and Sewer District (Water District) appeals from the entry of summary judgment in favor of Elk Grove Development Company (Elk Grove) and the Elk Grove Homeowners Association (HOA), by the Eighteenth Judicial District Court, Gallatin County, and entry of an injunction enjoining the Water District "from using the [Elk Grove] Subdivision's water sourced from any of the wells located within the Subdivision and from the Water Right" for use upon property outside the Subdivision. We reverse and remand, addressing only the issue restated as follows:

> *Did the District Court err by determining the subdivision covenant was a reasonable restraint upon the alienation of a water right?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This case arises out of the use and proposed use of water pursuant to a water right obtained for a water system located in the Elk Grove Subdivision (Subdivision), in Gallatin County, Montana. The Subdivision consists of numerous properties in four platted, approved, and recorded phases, for residential, commercial, and open space uses. Three of the phases have been developed for primarily residential purposes, and the fourth remains yet undeveloped, including 12 commercial lots. The Subdivision was originally developed by Elk Grove and its related entity, Concinnity, LLC (Concinnity), in the early 2000s.[1] Concinnity applied for and was issued Water Use Permit 41H-110168-00 (the Water Right) by the Montana Department of Natural Resources and Conservation (DNRC), for the

---

[1] Elk Grove continues to own lots within the Subdivision.

3

Subdivision's use, and Elk Grove designed and developed a technologically advanced, closed-loop, self-supporting water and wastewater system that did not require any off-site utilities, to serve the Subdivision.

¶3     A set of covenants entitled the "Real Covenants" were adopted for the Subdivision. One such covenant, separately untitled within the Real Covenants but denominated by the District Court as the "Water Distribution Covenant" (Covenant), is the central focus of this litigation, and provides:

> The Water Distribution Properties shall be possessed and used exclusively for the diversion and distribution of a water and water supply for residential, commercial and open space use (including, but not by way of limitation, the irrigation of parks) of all the Benefited Property and each part thereof, and all of the Water Distribution Properties shall be deemed dedicated to a public use.

The referenced "Water Distribution Properties" were further defined as property "burdened" by the Real Covenants, and are comprised of "[a]ll water and water rights related to or arising out of Water Use Permit No. 41H-P110168-00," as well as the physical components of the water system and associated easements, separately described in detail within the Real Covenants and summarized by Elk Grove's appellate briefing as the "utility lots, easements, pumps, wells, pipelines and related infrastructure that were developed to deliver water to the Benefited Property.[2]" Additional "Burdened Property" under the Real

---

[2] The Real Covenants also refer to this property as the "Benefited Premises."

4

Covenants included the sewage and wastewater treatment properties.[3] All of the Real Covenants were made to "run with the land and benefit each and all of the owners" of the land within the Subdivision.

¶4 In 2003, Elk Grove/Concinnity conveyed the water system and the Water Right to Utility Solutions, LLC (Utility Solutions) by warranty deed that was made "subject to . . . and shall be burdened by those real covenants set forth as Exhibit 5 hereto." Exhibit 5 was the Real Covenants, including the Water Distribution Covenant. In 2006, Utility Solutions applied with the DNRC to modify the Water Right to include additional property in a portion of a neighboring undeveloped subdivision owned by APK, LLC (APK Property). The DNRC received no objections to Utility Solutions' application, and authorized the change in July of 2007. In accordance with the authorization, Utility Solutions thereafter contracted to provide water to the APK Property.

¶5 In 2015, Utility Solutions sold its interest in the system, including the Water Right, to the Water District, which assumed the contract to provide water to the APK Property. The conveyance to the Water District was made by warranty deed that provided the transfer was subject to "all covenants, conditions, restrictions, and agreements and instruments of record," which indisputably included the Real Covenants.

---

[3] The sewage and wastewater treatment properties were not included within the definition of "Water Distribution Properties," and, although referenced in the pleadings and briefing, do not appear to be subject to injunction request.

¶6     Subsequent action by the Water District before the DNRC with regard to the Water Right is factually contested. The Water District states it "applied for an extension of the Water Right before its expiration date," and that DNRC "has treated the Water Right as extended." Elk Grove contends, referring to the change to the Water Right approved by DNRC in 2007, that Utility Solutions and its successor Water District "appear to have failed to complete the change within the time allotted in the change approval. In other words, the conditional water rights change authorization may now be expired."[4] However, Elk Grove further offers that "[t]he fact that DNRC has not definitively taken final action on the extension during the pendency of this appeal is immaterial to the outcome of the present issues. Elk Grove offers these facts for context only."

¶7     Also factually disputed is whether the 2006-2007 change application process before the DNRC was properly noticed. The Water District states, at that time, "DNRC published notices in the Bozeman Daily Chronicle in accordance with [the MCA]," and that, "[h]ad Appellee Elk Grove or Intervenor HOA objected to DNRC's Change of Place of Use Permit between 2007 and 2015, the Appellant Water District had time and ability not to assume the APK Contract. Their silence caused the Appellant Water District to assume the contractual obligation to provide water to APK." Elk Grove answers that "[n]otice of the change application was not completed in accordance with the [MCA.] Having not given proper notice, no objections were received," leading DNRC to conditionally approve

---

[4] Elk Grove alleged in its complaint that the DNRC's change authorization imposed a deadline of December 31, 2016, for Utility Solutions to "complete the authorization."

the change. Elk Grove asserts it did not learn of the Water District's intent to provide water to property outside the Subdivision until a couple years later. The District Court reasoned that resolution of these questions was not necessary for purposes of its ruling.

¶8 Elk Grove initiated this litigation by filing a complaint for a permanent injunction, praying for "an order enjoining [the Water District] from offering water service sourced from any well located on the Burdened Property and from the Water Right to any property" outside the Subdivision. Elk Grove moved for summary judgment, arguing "[t]he Covenants unambiguously restrict off-subdivision use of water from wells and appurtenant infrastructure[.]" The Water District opposed the motion and filed a cross motion for summary judgment, arguing "an interpretation of the Covenant that precludes the use of the Water Right . . . is an unreasonable restraint on alienation that renders the Covenant void." The HOA intervened in the action and moved the District Court for issuance of a preliminary injunction prohibiting the Water District from "withdraw[ing] water, in violation of the Association's rights and water right covenants, during the pendency of this litigation." At a hearing on the motions, the Water District argued, in response to the District Court's questioning, that the restraint was ineffective because the DNRC's change-of-use determination "trumps" the Covenant.

¶9 The District Court first interpreted the Covenant, holding "the Water Distribution Covenant clearly and unambiguously restricts water supply only to those lots in the Subdivision," and any "attempt to deliver water from the Subdivision's water supply to property outside the Subdivision is therefore a violation of the plain terms of the Water

7

Distribution Covenant." Addressing the water right change process, the District Court held that "enforcement of the Water Distribution Covenant precludes any attempt by the Water Right holder to apply to change or potentially expand the right[,]" thus essentially voiding as a matter of law the change process that had been conducted by the DNRC for Water Use Permit No. 41H-110168-00 in response to Utility Solutions' application.

¶10 Turning to the question of whether the Covenant was an unreasonable restraint of alienation, the District Court applied the factors we have cited for assessing the reasonableness of such provisions. *See Edgar v. Hunt*, 218 Mont. 30, 33-34, 706 P.2d 120, 122 (1985); *Urquhart v. Teller*, 1998 MT 119, ¶ 18, 288 Mont. 497, 958 P.2d 714. Although recognizing several unique aspects of water rights generally, the District Court determined that "the Water Distribution Covenant, although a restraint on alienability, is not unreasonable or repugnant to the interest created, but rather furthers its intended purpose of proactively protecting the exclusive water distribution source for the Subdivision." The District Court granted summary judgment in favor of Elk Grove and the HOA, and entered an injunction that provided as follows:

> [The Water District] is enjoined from using the Subdivision's *water* sourced from any of the wells located within the Subdivision and *from the Water Right* to any property located outside the boundaries of the Subdivision[.] [(Emphasis added.)]

With this, the District Court entered a final judgment, and denied as moot the HOA's request for a preliminary injunction during the pendency of the litigation.

¶11 The Water District appeals.

8

**STANDARD OF REVIEW**

¶12 This Court reviews a district court's grant of summary judgment de novo, applying the standards set forth in M. R. Civ. P. 56. Thus, we review the record to determine whether material issues of fact exist and whether the movant is entitled to judgment as a matter of law. *Urquhart*, ¶ 14.

**DISCUSSION**

¶13 *Did the District Court err by determining the subdivision covenant was a reasonable restraint upon the alienation of a water right?*

¶14 The Water District argues the Covenant is an unreasonable restraint on alienation because it "usurps the State's jurisdiction over its waters" and violates the requirement of state water law that waters be put to beneficial use. Elk Grove argues the Covenant is a reasonable restraint on alienation, as determined by the District Court in applying the factors set forth by this Court, and does not conflict with "the State's constitutional-statutory-administrative authority" over state waters.[5]

¶15 Regarding restraints on alienation, the Montana Legislature enacted the primary rule in § 70-1-405, MCA, which provides, "[c]onditions restraining alienation, *when repugnant to the interest created*, are void." (Emphasis added.) In *Edgar*, we said that "[t]his Court reads [§ 70-1-405, MCA] as a statement of the majority common law rule that restraints on alienation, when reasonable, are valid." *Edgar*, 218 Mont. at 33, 706 P.2d at 122. We then explained the Restatement of Property and case precedent had provided "various factors

---

[5] Elk Grove HOA filed a joinder with the appellate briefing of Elk Grove.

9

that *may be considered* when determining the reasonableness of any particular restraint." *Edgar*, 218 Mont. at 34, 706 P.2d at 122 (emphasis added). Those factors included the type of price set, including whether it is "greatly disproportionate to the market value of the property"; the intent of the parties contracting for the preemptive right, including the restraint's primary purpose; and whether the parties contracting for the preemptive right mutually consented. *Edgar*, 218 Mont. at 33-34, 706 P.2d at 122. The District Court carefully considered these factors in determining the restraint imposed by the Covenant was reasonable. However, in this case, the elective factors assessing reasonableness do not bear upon the question as much as the general principle mandated by statute: whether the restraint upon alienation is "repugnant to the interest created." Section 70-1-405, MCA.

¶16 Property interests in water are unique under Montana law. Beginning with Article IX, Section 3(3), of the Montana Constitution, "[a]ll surface, underground, flood, and atmospheric waters within the boundaries of the state are property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by the law." Montana waters are owned by the State of Montana. Further, Article IX, Section 3(4), mandates that "[t]he legislature shall provide for the administration, control, and regulation of water rights and shall establish a system of centralized records[.]" Pursuant thereto, the Legislature enacted Title 85, Chapter 2 of the Montana Code Annotated, the Montana Water Use Act. Section 85-2-101, MCA, provides, in pertinent part,

> (1) Pursuant to Article IX of the Montana constitution, the legislature declares that any use of water is a public use and that the waters within the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided in this chapter.

10

. . .

> (3) It is the policy of this state and a purpose of this chapter to encourage the wise use of the state's water resources by making them available for appropriation consistent with this chapter and to provide for the wise utilization, development, and conservation of the waters of the state for the maximum benefit of its people with the least possible degradation of the natural aquatic ecosystems.  In pursuit of this policy, the state encourages the development of facilities that store and conserve waters for beneficial use, for the maximization of the use of those waters in Montana, for the stabilization of streamflows, and for ground water recharge.

> (4) Pursuant to Article IX, section 3(1), of the Montana constitution, it is further the policy of this state and a purpose of this chapter to recognize and confirm all existing rights to the use of any waters for any useful or beneficial purpose.

When amending the Water Use Act in 1997, the Legislature recognized "the unique character and nature of water resources of the state[,]" which it placed into the Act's Declaration of Policy and Purpose.  *See* § 85-2-101(5), MCA; *Confederated Salish & Kootenai Tribes v. Clinch*, 2007 MT 63, ¶ 34, 336 Mont. 302, 158 P.3d 377 (quoting 1997 Laws of Mont., ch. 497, 2790-91).

¶17     Thus, even when a water right is held by a party, it is not "owned" in the usual sense.  Rather, "a water right is an usufructory right, that is[,] a right to *make use* of the water, rather than a physical ownership right."  *Nelson v. Brooks*, 2014 MT 120, ¶ 48, 375 Mont. 86, 329 P.3d 558 (emphasis added) (citations omitted).  Likewise, "a water right is . . . a right *to make a use of* waters owned by the state—a water right *confers no ownership* in those waters."  *Mont. Trout Unlimited v. Beaverhead Water Co.*, 2011 MT 151, ¶ 31, 361 Mont. 77, 255 P.3d 179 (quoting Albert W. Stone, *Montana Water Law*, 70, 73 (St. Bar of Mont. 1994) (emphasis added) (internal quotations omitted).  Professor Stone further

11

explained, as we cited, that water law focuses on "uses, re-uses, sharing, and priorities rather than exclusivity, possession or even permanence." *Mont. Trout Unlimited*, ¶ 31. Even though a party possesses a water right, that right is subject to change upon the State's determination of issues related to beneficial use as well as modifications in use. *See, e.g.*, *79 Ranch v. Pitsch*, 204 Mont. 426, 431, 666 P.2d 215, 217 (1983) (water rights are subject to abandonment; "[t]he appropriation of water is based on its beneficial use. When the appropriator or his successor interest abandons or ceases to use the water for its beneficial use, the water right ceases."); *Nelson*, ¶ 48 (quoting *Woodward v. Perkins*, 116 Mont. 46, 53, 147 P.2d 1016, 1019 (1944) ("We long ago stated that 'the ownership of land where water has its source does not necessarily give exclusive right to such waters so as to prevent others from acquiring rights therein.'")); § 85-2-402, MCA (providing the process for modification of a water right before the DNRC). As the District Court here acknowledged, a water right "is not absolute because it is always subject to DNRC approval and oversight[.]"

¶18    The constitutionally based water right system cannot be thwarted by a privately entered property covenant. As the District Court recognized, the Water Distribution Covenant "precludes any attempt by the Water Right holder to apply to change or potentially expand the right[,]" and thus places restrictions upon a water right that conflict with state water law, specifically, the provisions governing water right modification. Containing no stated limitation on duration, the Covenant facially operates indefinitely, until such time as it would be removed, and thus would effectuate the imposition of

12

permanent restrictions upon the Water Use Permit. This Court invalidated a contractual restriction upon the re-sale of water rights without the seller's consent in *Ford v. Gregson*, 7 Mont. 89, 98, 14 P. 659, 662 (1887) (". . . it would tie up the sale of the water-rights of the others forever. Such a contract is certainly against public policy. . . . This is analogous to contracts which are in restraint of trade.").

¶19 Elk Grove attempts to illustrate the Covenant presents no conflict with state water law, arguing that "[e]ven if the DNRC were to grant an expanded place of use upon a proper process . . . the Real Covenants would still apply to restrict the District from transferring water outside of the Subdivision boundaries" because DNRC's approval "is not a requirement that the water be transferred to that place." However, while an approval by DNRC may not mandate the actual deployment of water on the changed location, the Covenant makes the change process a futility by prohibiting changes of use that state law would otherwise allow, thereby altering the variable nature of a water right and its requirement to be put to beneficial use. Elk Grove offers that ditch-sharing and water rotation agreements operate in the same way, allowing parties to "agree to use their water right in a more restrictive way for a greater, common benefit," but the contractual sharing limitations assumed by the parties in such agreements do not alter the nature of the right or purport to undermine the State's authority over the right, in contrast to the Covenant here. Consequently, we must conclude that the Covenant, to the extent it restricts alienation of the Water Right—here, prohibiting the alteration of Water Use Permit No. 41H-110168-00—is "repugnant to the interest created[,]" and invalid. Section 70-1-405, MCA.

¶20    Therefore, to the extent the District Court held the Covenant was a reasonable restraint on the alienation of the Subdivision's "water" and "Water Right," and so enjoined the Water District, we conclude it erred, and further conclude the Water District is entitled to summary judgment on that issue. This was the precise language within, and the extent of, the injunction entered in the final judgment, and is, technically, the only issue before us. However, it is also clear the litigation was broader, and addressed issues beyond the wording of the ordered injunction, as demonstrated by the parties' appellate briefing, which may now become relevant in light of the Court's decision herein.

¶21    Noted above, the Covenant restricted alienation of all "Water Distribution Properties," which was comprised of, as defined by the Real Covenants, not only "[a]ll water and water rights related to or arising out of Water Use Permit No. 41H-P110168-00," but other properties as well. Those other properties included the physical assets of the Subdivision's distribution system, described at length within the Real Covenants, and summarized in Elk Grove's appellate briefing as "utility lots, easements, pumps, wells, pipelines and related infrastructure that were developed to deliver water to the Benefited Property." We do not reach here the related but separate question—which was not addressed in the injunction—of whether some or all of these other physical properties could and were properly restricted from alienation by the Covenant. In that connection, there remain factual questions concerning system capacity. The Water District contends its engineering experts have "demonstrate[d] that the Water Right (as amended) and pipeline infrastructure are sufficient to provide adequate water flow to both the APK Property *and*

14

all Subdivision lots" (emphasis in original), while Elk Grove responds that the Water District's engineers "relied on disputable assumptions as to future quantity needed[.]" This factual dispute was not addressed by the District Court. Thus, beyond restrictions upon alienation, the question remains whether additional uses can be made of the Subdivision's properties without compromising the interest, as stated in the Real Covenants, "of supplying a water and water supply to all the residential and commercial uses and associated open space uses within" the Subdivision, including "such lands that may otherwise be developed for such residential and commercial purposes." The Water District contends this issue was determined by the DNRC during the water permit change proceeding, and Elk Grove contends proper notice of this proceeding was not provided so that it could participate. The extent and binding effect of the DNRC's determination of that issue within this proceeding, and whether Elk Grove waived its participation, as well as the other referenced issues, may now need to be evaluated by the District Court upon a complete factual record and legal arguments, including whether any extension of the Water Permit granted by DNRC remains valid before that agency. To clarify, we are not mandating that any of these issues be addressed upon remand; we are simply noting that the issues, raised in the litigation, are not encompassed within our opinion here.

¶22    Reversed and remanded.


/S/ JIM RICE


15

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON