FILED

05/10/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0436

DA 21-0436

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 88

THE ESTATE OF CHARLOTTE MANDICH, via
Susan G. Mathews, its Personal Representative

       Plaintiff and Appellee,

  v.

MARK AND KATHLEEN FRENCH,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DV-19-87
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Graham J. Coppes, Emily F. Wilmott, Ferguson Law Office PLLC,
Missoula, Montana

       For Appellee:

           Jesse Kodadek, Elizabeth W. Erickson, Worden Thane P.C., Missoula,
Montana

Submitted on Briefs:  April 13, 2022

Decided:  May 10, 2022

Filed:

                              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Mark and Kathleen French ("the Frenches") appeal an order entered August 3, 2021, in the Twentieth Judicial District Court, Sanders County, dismissing the final count of Charlotte Mandich's ("Mandich") Complaint. The District Court previously granted summary judgment in favor of Mandich's declaratory judgment claim and issued a permanent injunction against the Frenches. We affirm and restate the issues on appeal as follows:

> *1. Whether the District Court erred in granting summary judgment to Mandich on the 1997 Agreement's limitation of usage language.*
>
> *2. Whether the District Court manifestly abused its discretion in granting Mandich permanent injunctive relief.*
>
> *3. Whether the District Court abused its discretion in denying the Frenches' motion for leave to amend their Answer.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      The Frenches and Mandich own adjoining properties in Sanders County. In 1997, Mandich and her husband signed a Water Line Easement and Shared Well Agreement ("1997 Agreement") with Paradise Valley, Inc., the Frenches' predecessor in interest. The 1997 Agreement granted the Mandiches "a perpetual, non-exclusive water line easement" and provided, pertinently, that the Mandiches "hold water rights to the well" and would "share the water from said well with [Paradise Valley and its successors] in that the water volume available for use on [Paradise Valley's] property shall be for domestic purposes only for one, single family dwelling." The 1997 Agreement further provided its terms would be binding on the parties and their successors.

2

¶3　The Frenches purchased their property from Paradise Valley in January of 2003. The Frenches' deed provides their purchase was subject to several easements, including the 1997 Agreement.

¶4　In 2004, the Mandiches and Frenches signed a Water System Use Agreement ("2004 Agreement"). The 2004 Agreement provided "for the continued maintenance, operation and replacement of a Water System for use" by both parties. By its terms, the 2004 Agreement neither mentions nor modifies the 1997 Agreement.

¶5　In early August 2019, the Frenches informed Mandich they needed to work on the shared well. The Frenches additionally told Mandich their plan to put in an RV park on their land. Shortly thereafter, the Frenches notified Mandich that they were going to shut off her water and begin working on the well. Mandich told them not to act until she could assess the legal ramifications.

¶6　On August 10, 2019, Mandich's water supply was briefly shut off. Her hired pump servicer informed her she should not drink or use the water due to an increased risk of contamination. Mandich's water supply was shut off again on August 12, 2019, and remained disconnected for the final three weeks of August. Upon reconnection, Mandich discovered the Frenches had installed a new horsepower pump to the well.

¶7　Mandich filed a Complaint in November 2019 seeking declaratory and injunctive relief. Mandich sought a declaration that the Frenches had materially breached the 1997 Agreement or, alternatively, that the language of the 1997 Agreement strictly limited the Frenches' right to use the well to domestic purposes for one single-family dwelling.

3

Mandich additionally requested injunctive relief barring the Frenches from "modifying, tampering with, or in any way interfering with [Mandich's] use of the shared well, or [Mandich's] water line or electrical system connected to the well."

¶8 Mandich filed a motion for summary judgment in February 2020, before the Frenches filed any responsive pleading. Acting pro se, the Frenches filed their "Answer to [Mandich's] Complaint/Motion for Summary Judgment" on March 4, 2020. The Frenches argued the 1997 Agreement limited Mandich's, not the Frenches', use of the well. The Frenches further argued that Mandich had materially breached the 1997 Agreement. The Frenches obtained counsel on March 25, 2020.

¶9 On October 23, 2020, the District Court held a hearing on Mandich's motion for summary judgment. [1] The District Court issued its Order on March 2, 2021. The Order denied summary judgment on Mandich's breach of contract claim, concluding that whether the Frenches' conduct constituted a material breach was a question of fact. The District Court granted summary judgment on Mandich's alternative argument concerning the 1997 Agreement's limitation of use language. The District Court noted that both parties agreed "this is a matter of contract interpretation" and concluded the 1997 and 2004 Agreements

---

[1] In its order setting the hearing, the District Court invited the Frenches to file affidavits in support of their position that material facts were in dispute. The Frenches filed a 15-page affidavit of Kathleen French, along with numerous exhibits. Mandich takes issue with the Frenches' factual reliance on this affidavit on appeal, arguing it was procedurally improper. Notwithstanding Mandich's objection, the affidavit does not create genuine issues of material fact or change our analysis, which centers on the plain and unambiguous language of the 1997 Agreement.

4

must be read together.[2]  The District Court found "no language in the 2004 Agreement that would have it replace the 1997 Agreement."  The District Court additionally granted Mandich's request for a permanent injunction.

¶10    Following the District Court's Order, the Frenches filed two motions.  First, on March 29, 2021, they filed a motion pursuant to M. R. Civ. P. 59 to alter or amend the judgment ("Motion to Alter").  For the first time, the Frenches contended Montana's Water Use Act, §§ 85-1-101 et seq., MCA, controlled the case.  The Frenches additionally argued that the District Court relied on disputed facts in issuing its permanent injunction and that the Order was internally inconsistent and required alteration.

¶11    Before the District Court ruled on their Motion to Alter, the Frenches filed a motion on April 27, 2021, pursuant to M. R. Civ. P. 15, requesting leave to amend their answer ("Motion for Leave to Amend").  Citing recent actions by Mandich and her agents, the Frenches sought to assert seven counterclaims against Mandich, seeking a declaratory judgment, injunctive relief, and compensatory damages.  The Frenches argued they had not pursued these claims previously due to their pro se status and belief the case would settle.

¶12    The District Court issued an Order of Clarification on May 27, 2021.  The District Court affirmed its ruling in favor of Mandich but clarified that the issue was one of contract interpretation and that it was not being asked to adjudicate a water right.  The District Court

---

[2] The Frenches dispute the District Court's conclusion, arguing they never expressly agreed on this point.  Notwithstanding any express agreement, the Frenches' argument at the summary judgment hearing characterized shared well agreements as "simply contracts" and raised several tenets of contractual interpretation.

further clarified the scope of the permanent injunction, allowing the Frenches to "access and use the well with reasonable notice to Mandich, for purposes of making repairs and for improvements to the well." The District Court issued its order denying the Frenches' Motion for Leave to Amend the same day. The District Court agreed with Mandich's arguments that the Frenches failed to show the justifications for the nearly 14-month delay between their original Answer and the Motion for Leave to Amend outweighed the prejudice to Mandich and noted the Frenches filed the motion following an adverse ruling on summary judgment.

¶13 After prevailing on summary judgment, Mandich moved to dismiss the remaining count of her complaint, concerning whether the Frenches materially breached the 1997 Agreement, on June 29, 2021. The Frenches opposed the motion, arguing that Mandich should have stipulated to their request to amend their Answer to pursue counterclaims against her and that Mandich's actions had prejudiced them and caused them to incur significant expenses. The Frenches additionally requested the District Court "promote justice" by requiring Mandich, 98 years old at the time, pay their attorney fees and costs.[3]

¶14 The District Court granted Mandich's motion to dismiss on August 3, 2021. The District Court noted Mandich's successful request for injunctive relief and "understandable" desire not to spend her final years litigating the matter. The Frenches appeal.

---

[3] We note that Mandich died while this appeal was pending, leaving her estate to litigate the matter.

6

**STANDARD OF REVIEW**

¶15    We review summary judgment rulings de novo for conformance to M. R. Civ. P. 56. *Davis v. Westphal*, 2017 MT 276, ¶ 9, 389 Mont. 251, 405 P.3d 73.  Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  M. R. Civ. P. 56(c)(3).  Whether a genuine issue of material fact exists or whether a party is entitled to judgment as a matter of law are conclusions of law we review de novo for correctness.  *Davis*, ¶ 9.

¶16    The grant or denial of injunctive relief remains within the broad discretion of the district court based on applicable findings of fact and conclusions of law.  *Weems v. State*, 2019 MT 98, ¶ 7, 395 Mont. 350, 440 P.3d 4.  We review the grant or denial of injunctive relief for a manifest abuse of discretion by the district court.  *Shammel v. Canyon Res. Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912.  A manifest abuse of discretion is an obvious, evident, or unmistakable abuse of discretion.  *Davis*, ¶ 10.  "While the denial of a temporary or permanent injunction is reviewed for manifest abuse of discretion, deference is not applied to the district court's conclusions of law, which are reviewed de novo to determine whether its interpretation of the law is correct."  *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 13, 363 Mont. 366, 272 P.3d 635 (internal quotations omitted).

¶17    We review the grant or denial of leave to amend for an abuse of discretion.  *Loomis v. Luraski*, 2001 MT 223, ¶ 41, 306 Mont. 478, 36 P.3d 862.

7

**DISCUSSION**

¶18 *1. Whether the District Court erred in granting summary judgment to Mandich on the 1997 Agreement's limitation of usage language.*

¶19 The Frenches argue first that the Water Use Act, not contract law, should determine this case. They contend they raised this argument during the summary judgment hearing. This, however, is an overstatement. During the hearing, the Frenches argued that "Plaintiffs are mistaken about how and what authority usufructuary rights and water arise [in] this state. Shared well agreements are simply contracts that lay out responsibilities and obligations of the parties that own diversionary points in unison." Counsel's argument reaffirms the Frenches' position that the issue is a matter of contract law. Even a generous reading of the argument does not implicate the Water Use Act or bring those statutes to the District Court's attention. Ample opportunity existed for the Frenches to expressly raise the issue. They failed to do so.

¶20 The Frenches further posit that the District Court's Order of Clarification functioned as a response to their Motion to Alter raising the Water Use Act issue for the first time, thus preserving the argument. However, we have repeatedly recognized that M. R. Civ. P. 59 may not be used to raise arguments that could have been raised prior to judgment. *Signal Perfection, Ltd. v. Rocky Mountain Bank - Billings*, 2009 MT 365, ¶ 13, 353 Mont. 237, 224 P.3d 604. Nor does "mere interpretation or clarification . . . involve or effect a substantive alteration or amendment of the prior judgment—it merely involves interpreting or clarifying its original meaning or effect without material alteration or deviation." *Meine v. Hren Ranches, Inc.*, 2020 MT 284, ¶ 19, 402 Mont. 92, 475 P.3d 748. The District

8

Court's Order of Clarification did not effectuate a material alteration or deviation or address the substance of the Frenches' argument concerning the Water Use Act. Rather, the District Court explained it was not being asked to adjudicate a water right and clarified the scope of its judgment as necessary to carry out its original intent. The Frenches' Motion to Alter failed to preserve their Water Use Act argument. [4]

¶21    The Frenches cite *Elk Grove Development Co. v. Four Corners County Water and Sewer District*, 2020 MT 195, 400 Mont. 515, 469 P.3d 153, to argue contract law cannot displace the Water Use Act. In *Elk Grove*, we concluded Montana's constitutionally based water right system could not be thwarted by a private property covenant. *Elk Grove*, ¶ 18. *Elk Grove*, however, was not about private shared well agreements. Rather, the issue in *Elk Grove* concerned the transfer of water rights associated with a subdivision and the effect of that subdivision's covenants, which purported to control the exercise of those water rights in perpetuity. *Elk Grove*, ¶¶ 4-5. The covenant at issue in *Elk Grove* expressly covered "all water and water rights related to or arising out of" a water use permit, along with all physical components of the water use system. *Elk Grove*, ¶ 3. We concluded the covenant "alter[ed] the variable nature of a water right and its requirement to be put to beneficial use" by "prohibiting changes of use that state law would otherwise allow[.]" *Elk*

---

[4] The Frenches imply their pro se status at the case's outset warrants broad latitude for their failure to raise the Water Use Act. However, the Frenches were represented by counsel at the summary judgment hearing, wherein counsel failed to expressly raise the argument. Likewise, the Frenches were represented by counsel when they filed their Motion to Alter. While pro se litigants receive some latitude, the mere fact that the Frenches acquired counsel with new theories about the case does not provide sufficient grounds to satisfy Rule 59.

*Grove*, ¶ 19. Conversely, we noted that "contractual sharing limitations assumed by the parties" in ditch-sharing and water rotation agreements "do not alter the nature of the right or purport to undermine the State's authority over the right, in contrast to the Covenant here." *Elk Grove*, ¶ 19.

¶22 Here, the "contractual sharing limitations" assumed by the Mandiches and the Frenches' predecessors neither altered the nature of the right nor purported to undermine the State's authority over the right. Rather, the plain language of the 1997 Agreement created an easement and shared well benefitting the Mandiches, prescribed that the Mandiches "agree to share the water from said well" and established that the water volume available on the Frenches' property "shall be for domestic purposes only for one, single family dwelling." The 1997 Agreement does not expressly cover "all water and water rights related to" the well or restrict alienation of the water right and thus, by its plain language, cannot be construed to alter the right or undermine the State's authority over the right. We turn now to the District Court's interpretation of the contracts at issue.

¶23 The construction of a writing granting an interest in real property, such as an easement, is governed by rules of contract interpretation. *Broadwater Dev., LLC, v. Nelson*, 2009 MT 317, ¶ 19, 352 Mont. 401, 219 P.3d 492. Thus, where the terms of an agreement have been reduced to writing by the parties, the writing is considered to contain all necessary terms, and no evidence of terms of the agreement other than the contents of

the writing should be considered.[5] *Whitefish Congregation of Jehovah's Witnesses, Inc. v. Caltabiano*, 2019 MT 228, ¶ 28, 397 Mont. 284, 449 P.3d 812. Whether an ambiguity exists in a contract is a matter of law. *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 26, 350 Mont. 516, 212 P.3d 264. An ambiguity's existence is determined on an objective basis. *Richards*, ¶ 26. Thus, mere disagreement as to the interpretation of a contract does not automatically create an ambiguity. *Creveling v. Ingold*, 2006 MT 57, ¶ 8, 331 Mont. 322, 132 P.3d 531.

¶24    The Frenches contend an ambiguity exists between the two agreements. Specifically, the "proposed improvements" language in the 2004 Agreement, the Frenches argue, requires the introduction of extrinsic evidence to support the parties' intent. We disagree. The Frenches were aware of the 1997 Agreement at the time the parties signed the 2004 Agreement. The 1997 Agreement provided the Mandiches and Paradise Valley intended to bind their successors in interest. The Frenches' warranty deed reflected this intent. Their deed expressly referenced the 1997 Agreement and provided the Frenches purchased the property subject to Mandich's waterline easement. The 2004 Agreement additionally provides for the "continued maintenance" of the water system and identifies

---

[5] The Frenches additionally contend language contained in the 1997 Agreement that the Mandiches "hold water rights" to the well constitutes a condition precedent to contract formation thereby affecting the validity of the 1997 Agreement. The Frenches failed to raise this argument to the District Court. We do not consider arguments raised for the first time on appeal because it would be fundamentally unfair to fault the district court for not ruling on an issue not presented. *Signal Perfection,* ¶ 14. Moreover, the Frenches represented their belief the 1997 Agreement was valid, arguing to the District Court their position "that the [2004 Agreement] between the parties replaced the [1997 Agreement], which served the same purpose, between the predecessors in interest and [Mandich.]" We decline to address this argument further.

11

preexisting supply piping located on Mandich's property. The 2004 Agreement identifies the Frenches as owners of "Tract B, COS 1507" and references easements "shown on Tract B, COS 1507." This language refers to the 1997 Agreement, which created the easement and water system. The 2004 Agreement does not, by its terms, replace the 1997 Agreement. If the parties intended to replace the 1997 Agreement, they could have expressly provided terms reflecting that intent. They failed to do so.

¶25    The unambiguous terms of the 1997 Agreement expressly limit the water volume to one single-family dwelling and bind the successors in interest of both the Mandiches and Paradise Valley. The 2004 Agreement did not, by its plain language, replace the 1997 Agreement. The District Court properly granted summary judgment in favor of Mandich.

¶26    *2. Whether the District Court manifestly abused its discretion in granting Mandich permanent injunctive relief.*

¶27    Permanent injunctive relief, also known as final injunctive relief, is available only where necessary to prevent irreparable injury in the absence of a plain, speedy, and adequate statutory or common law remedy. *Davis*, ¶ 26. Section 27-19-102, MCA, provides for final injunctive relief to prevent breach of an obligation in the following circumstances: "(1) pecuniary compensation would not afford adequate relief; (2) it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief; (3) the restraint is necessary to prevent a multiplicity of judicial proceedings; or (4) the obligation arises from a trust." We have recognized where a lower court "has clearly outlined the grounds underlying its summary judgment ruling, a

12

permanent injunction may be properly granted on summary judgment." *Mont. Bd. of Pharm. v. Kennedy*, 2010 MT 227, ¶ 30, 358 Mont. 27, 243 P.3d 415.

¶28    In its Order granting Mandich partial summary judgment, the District Court outlined the factual history of the case, including the Mandiches' unsuccessful attempts to drill wells preceding the 1997 Agreement, the Frenches' disruption to Mandich's water supply, and the limiting language of the 1997 Agreement.  The District Court noted the clear and plain language of the 1997 Agreement and the Frenches' intent and measures taken to expand usage beyond what was authorized. The District Court further noted injunctive relief is only available when necessary to prevent irreparable injury in the absence of a plain, speedy, and adequate statutory or common law remedy and granted Mandich's request for injunctive relief "[b]ased on the facts and circumstances of the case."  The District Court clearly outlined the grounds underlying its summary judgment ruling and did not manifestly abuse its discretion in granting Mandich permanent injunctive relief based on the facts and circumstances presented.  *See Kennedy*, ¶ 30.

¶29    *3. Whether the District Court abused its discretion in denying the Frenches' motion for leave to amend their Answer.*

¶30    On appeal, the Frenches argue the District Court's scheduling and the COVID-19 pandemic contributed to the nearly 14-month gap between their Answer and their Motion for Leave to Amend.  However, the Frenches failed to raise these specific arguments to the District Court.  Again, we do not consider arguments that were not presented to the district court but raised for the first time on appeal.  *Signal Perfection*, ¶ 13.

13

¶31 Instead, the crux of the Frenches' Motion for Leave to Amend before the District Court rested upon their pro se status when they filed their Answer and their concomitant ill-conceived belief the case would settle. The Frenches argue that upon hiring counsel they sought to assert counterclaims, thus necessitating an amendment to their Answer. While we generally provide pro se litigants a certain amount of latitude regarding procedure, that latitude cannot be so wide as to prejudice the opposing party. *Neil Consultants, Inc. v. Lindeman*, 2006 MT 80, ¶ 8, 331 Mont. 514, 134 P.3d 43. Significantly, the Frenches obtained counsel in late March 2020 but nonetheless waited for 13 months to file their Motion for Leave to Amend in April 2021, after receiving an unfavorable and dispositive ruling in the case.

¶32 M. R. Civ. P. 15(a) provides that courts "should freely give leave [to amend] when justice so requires." While we have encouraged a liberal interpretation of Rule 15(a) making the allowance of amendments the general rule and denial the exception, "this does not mean that a court must automatically grant a motion to amend." *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 20, 302 Mont. 55, 11 P.3d 544. Leave to amend is not appropriate "when the party opposing the amendment would incur substantial prejudice as a result of the amendment." *Peuse v. Malkuch*, 275 Mont. 221, 227, 911 P.2d 1153, 1156 (1996). In determining whether an amendment would cause undue prejudice, courts should balance the prejudice suffered by the opposing party against the sufficiency of the moving party's justification for the delay. *Ally Fin., Inc. v. Stevenson*, 2018 MT 278, ¶ 14, 393 Mont. 332, 430 P.3d 522. Prejudice may arise when the opposing party has already

expended "substantial effort and expense" in the course of the dispute that "would be wasted" if the moving party were allowed to amend and proceed on a new legal theory. *Eagle Ridge Ranch v. Park Cty.*, 283 Mont. 62, 68-69, 938 P.2d 1342, 1346 (1997). The decision to grant or deny a motion to amend remains within the district court's discretion. *Kershaw v. Mont. Dep't of Transp.*, 2011 MT 170, ¶ 25, 361 Mont. 215, 257 P.3d 358.

¶33 Importantly, we have recognized "the general rule that a court ordinarily will be reluctant to allow leave to amend to a party against whom summary judgment has been entered[.]" *Stanford v. Rosebud Cty.*, 254 Mont. 474, 478, 839 P.2d 93, 95 (1992) (internal quotations and citations omitted). We noted "both common sense and authority" dictate against granting leave to amend "when the motion to amend is made after judgment has been entered against [the party.]" *Stanford*, 254 Mont. at 477, 839 P.2d at 95. Consistent with the general rule, we have repeatedly declined to conclude that district courts abuse their discretion in denying motions to amend after a motion for summary judgment has been filed or granted. *See, e.g.*, *Bardsley v. Pluger*, 2015 MT 301, ¶ 22, 381 Mont. 284, 358 P.3d 907 (affirming the denial of a motion for leave to amend nearly one year after the filing of a motion for summary judgment); *Peuse*, 275 Mont. at 228, 911 P.2d at 1157 (affirming the denial of a motion for leave to amend based on the presence of a new lawyer and filed two years after the original pleadings, noting "[l]itigants should be allowed to change legal theories after a motion for summary judgment has been filed only in extraordinary cases."); *Trout v. Bennett*, 252 Mont. 416, 429, 830 P.2d 81, 89 (1992) (affirming the denial of a motion for leave to amend after summary judgment was entered

15

against Trout). We have also recognized strategically withholding a motion to amend does not justify amending the pleadings. *Kershaw*, ¶ 28.

¶34 The District Court did not abuse its discretion in denying the Frenches' Motion for Leave to Amend. The District Court weighed the Frenches' justifications against the prejudice to Mandich. Among others, the Frenches sought to litigate claims based on conduct in April 2021. The District Court reasoned that allowing an amendment would require litigating these new claims, effectively restarting the case. Underlying the District Court's reasoning was the "substantial effort and expense" already incurred by a woman in her late nineties. *See Eagle Ridge Ranch*, 283 Mont. at 68-69, 938 P.2d at 1346. The District Court additionally noted Mandich had already prevailed on summary judgment and her request for injunctive relief. *See Eagle Ridge Ranch*, 283 Mont. at 68-69, 938 P.2d at 1346.

¶35 Nor does the Frenches' belief the case would settle convince us the District Court abused its discretion. Implicit in this argument is the withholding of their Motion for Leave to Amend for strategic reasons, i.e., their belief the case would settle. We rejected withholding a Rule 15 motion for strategic reasons in *Kershaw*. *Kershaw*, ¶ 28. The District Court later characterized the delay in the filing of the Frenches' Motion for Leave to Amend as "suspect" and "disingenuous" following the Frenches' unsuccessful opposition to Mandich's motion for summary judgment. Whether the delay arose from strategic reasons or otherwise, the District Court properly denied the Frenches' Motion for Leave to Amend.

16

**CONCLUSION**

¶36    The District Court properly granted summary judgment to Mandich based on the clear and unambiguous language in the 1997 Agreement limiting water usage.  The District Court's grant of injunctive relief did not constitute a manifest abuse of discretion.  The District Court did not abuse its discretion in denying the Frenches' Motion for Leave to Amend.  The District Court's Order is affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

17